[L. A. No. 16282. In Bank.—November 15, 1939.]

IRENEO ROTEA, Respondent, v. PABLO IZUEL, as Executor, etc., Appellant.

Fall & Fall, W. B. Bobbitt, Earle M. Daniels and Allen O. Cooper for Appellant.

Allan J. Carter and Walter Y. Stedman, *Amici Curiae,* on Behalf of Appellant.

Alfred L. Bartlett, Kirtland I. Perky, James E. Fenton and Frank G. Howe for Respondent.

SPENCE, J., *pro tem.*—Plaintiff brought this action against the defendant executor of the last will and testament of Antonio Izuel, deceased, seeking to recover upon a rejected claim for the alleged reasonable value of services rendered to Eugenia Izuel, the sister of said Antonio Izuel, deceased. Plaintiff had judgment for the sum of $9,000 and from said judgment, defendant appeals.

There was but little conflict in the evidence and a brief summary of the facts will suffice. One of the sisters of the deceased, who had married plaintiff, died many years ago leaving five minor children as the issue of said marriage. At about the time of the death of plaintiff's wife, another sister of said deceased, namely Eugenia Izuel, moved into the home of plaintiff to live with the family and to assist in caring for said minor children. She had previously stayed at said home of plaintiff, for months at a time, during the illness of plaintiff's wife. In 1916 and while so living in plaintiff's home, said Eugenia Izuel became ill, was operated upon and thereafter was a semi-invalid for the remainder of her life. She nevertheless was not helpless and she did many things for herself and she instructed and advised said minor children. She died in 1932. Antonio Izuel died in 1935. The claim here involved was made by plaintiff against the estate of Antonio

Izuel, deceased, for services performed in furnishing room, board and nursing care to said Eugenia Izuel from 1916 until the time of her death in 1932.

Antonio Izuel, deceased, was unmarried and he also lived in plaintiff's home during a portion of said period. Plaintiff absented himself from his said home for more than a year during said period while on a trip to Mexico. At about the time of the death of Eugenia Izuel, said Antonio Izuel, deceased, built a home for himself and thereafter plaintiff and his family moved into and lived in the home of said Antonio Izuel, deceased. As the testimony of said Antonio Izuel could not be had by reason of his death and as the testimony of plaintiff was barred by the provisions of section 1880 of the Code of Civil Procedure, the only evidence offered concerning any agreement or understanding between said parties was rather indefinite and unsatisfactory. It appears that both plaintiff and the deceased, as well as the children of the plaintiff, had performed services for said Eugenia Izuel during the years in question; that both plaintiff and the deceased had purchased food used by the family group; that the deceased had paid the hospital and doctors' bills of said Eugenia Izuel; that deceased had given money to plaintiff on many occasions and had also given plaintiff seventeen checks which checks totaled approximately $1350. The testimony upon which plaintiff mainly relied was the testimony of certain children of plaintiff. This testimony related to conversations had between plaintiff and the deceased at various times during the 16-year period in which it was claimed that the deceased "promised to pay my father out of his estate for Eugenia's care" or as otherwise stated deceased said that the payment "for the services rendered to Eugenia would be at the time of his death whatever was left in his estate". Timely objection was made to this testimony but it was admitted subject to a motion to strike. The motion to strike was thereafter made as well as a motion for nonsuit, but both motions were denied.

It appears appropriate to state the substance of the pleadings and the findings. Preliminarily it may be said that it is apparently conceded that plaintiff could not recover upon the claimed oral agreement as said oral agreement was invalid under the statute of frauds and that plaintiff's cause of ac-

tion, if any, was one for the reasonable value of the services performed. (*Hagan* v. *McNary,* 170 Cal. 141 [148 Pac. 937, L. R. A. 1915E, 562]; *Trout* v. *Ogilvie,* 41 Cal. App. 167 [182 Pac. 333]; *Giles* v. *Reed,* 44 Cal. App. 367 [186 Pac. 614]; Civ. Code, sec. 1624, subd. 7; Code Civ. Proc., sec. 1973, subd. 6.) Plaintiff therefore did not directly allege the claimed oral agreement, but he did indirectly allege said oral agreement, presumably for the purpose of endeavoring to fasten liability upon the deceased for the services rendered to the sister and for the purpose of endeavoring to avoid the consequences of the application of the statute of limitations. The complaint was in the general nature of a common count but the exact nature of the allegations becomes important in the discussion which follows.

Plaintiff alleged that he furnished room, board and nursing care for said Eugenia Izuel for said period of approximately 16 years ''at the special instance and request of said Antonio Izuel'' and that the reasonable value of said services was $10,575. He further alleged, ''That all of said services were rendered by said plaintiff to said Antonio Izuel as aforesaid, during all of said time, with the expectation on the part of said plaintiff, that he would be paid and that he should receive, and with the expectation and intention, on the part of said Antonio Izuel, that said plaintiff should be paid and that he should receive, reasonable compensation therefor, out of the estate of said Antonio Izuel, after his death''. He further alleged, ''That all of said services were rendered by said plaintiff to said Antonio Izuel, continuously during all of said time, pursuant to the instance and request of said Antonio Izuel, as aforesaid, and pursuant to the said mutual expectations of said plaintiff and said Antonio Izuel, and with the knowledge and approval of the said Antonio Izuel, and he accepted said services, and the benefits derived therefrom.'' The findings followed closely the wording of the complaint except that the amount awarded was slightly less than that alleged.

It is difficult to determine from the complaint whether plaintiff was basing his claim against the deceased upon an alleged obligation implied in law, to wit: upon a *quasi*-contractual obligation, or upon an alleged obligation arising out of an agreement of the parties, to wit: upon a genuine contractual obligation. The pleading was no doubt drawn

in the light of several decisions in each of which the claimant sought recovery against the estate of the deceased for services rendered by the claimant with respect to the deceased personally over a long period of time. (*Mayborne* v. *Citizens T. & S. Bank,* 46 Cal. App. 178 [188 Pac. 1034]; *Warder* v. *Hutchison,* 69 Cal. App. 291 [231 Pac. 563]; *Robinson* v. *Chapman,* 98 Cal. App. 278 [276 Pac. 1081]; *Lauritsen* v. *Goldsmith,* 99 Cal. App. 671 [279 Pac. 168]; *Colwell* v. *Gardner,* 126 Cal. App. 403 [14 Pac. (2d) 825]; *Burr* v. *Floyd,* 137 Cal. App. 692 [31 Pac. (2d) 402]; *Manford* v. *Coats,* 6 Cal. App. (2d) 743 [45 Pac. (2d) 395]; *Seib* v. *Mitchell,* 10 Cal. App. (2d) 91 [50 Pac. (2d) 281]; *Wax* v. *Adair,* 16 Cal. App. (2d) 393 [60 Pac. (2d) 904]; *Turell* v. *Anderson,* 16 Cal. App. (2d) 445 [60 Pac. (2d) 906].) What is said in *Lauritsen* v. *Goldsmith, supra,* regarding the claim filed therein will demonstrate that plaintiff here was endeavoring "to steer a middle course" in order to avoid the consequences of the application of the statute of frauds and of the statute of limitations. It was there said at page 674, "Apparently the claim filed in the instant case avoided the consequences of relying on the ordinary contract implied by law as was done in the *Etchas* v. *Orena* case [127 Cal. 588, 60 Pac. 45] and at the same time avoided relying entirely upon the express promise to compensate by will, as did the claim in *Giles* v. *Reed.* The claim here is evidently framed to steer a middle course between these two cases and follows closely the language and findings of *Mayborne* v. *Citizens T. & S. Bank,* 46 Cal. App. 178 [188 Pac. 1034]."

Plaintiff relies upon the decisions above mentioned but we find none of them in point. In none of said cases was the invalid oral agreement admitted, over objection, for the purpose of imposing the original obligation which the invalid oral agreement purported to create. In each of said cases the services were performed with respect to and for the direct benefit of the deceased person and under such circumstances as to create an original obligation implied in law to pay the reasonable value of such services, which obligation arose independently of the terms of the invalid oral agreement. Recovery was therefore permitted upon such obligation implied in law rather than upon the invalid oral agreement. The most that can be said is that the use of the invalid oral agree-

ment was permitted, over objection, for the limited purpose of showing that it was intended by the parties that some compensation should be paid for such services and that the time for payment should be a future time rather than monthly (Labor Code, sec. 3002; formerly Civ. Code, sec. 2011), thereby preventing the running of the statute of limitations until such time had arrived. The soundness of the above-mentioned decisions has been questioned but it appears unnecessary to review said decisions here. It is only necessary to hold that the rule of said decisions may not be extended to permit a recovery in the instant case for the reasons hereinafter stated.

■ The services here were admittedly performed with respect to and for the direct benefit of Eugenia Izuel, the sister of the deceased. In other words, said services were not performed with respect to or for the direct benefit of the deceased or with respect to or for the direct benefit of any person as to whom the deceased owed a legal duty of support. Defendant therefore contends that plaintiff may not recover against the estate of the deceased upon the invalid oral agreement for the reasons hereinabove stated and that he may not recover upon an obligation implied in law as the law will not imply an obligation from the mere fact that the deceased may have requested plaintiff to perform services for a third person. In our opinion this contention must be sustained.

■ It appears to be well settled in this jurisdiction that where one person requests another to perform services for a third person, as to whom the first person owes no legal duty of support, any right of recovery against the first person must be based upon a valid agreement of the first person to pay for such services as the law will not imply an obligation on the part of such first person to pay for such services. (*McClenahan* v. *Keyes,* 188 Cal. 574 [206 Pac. 454]; *McClenahan* v. *Keyes,* 65 Cal. App. 467 [224 Pac. 241]; *Zumwalt* v. *Schwarz,* 112 Cal. App. 734 [297 Pac. 608].) The same rule was enunciated in *Bristol* v. *Sutton,* 115 Mich. 365 [73 N. W. 424], where the agreement to pay for the services was invalid under the statute of frauds. The reason for the rule seems to be that the parties should ordinarily be required to rely upon their agreement and that in the absence of a valid agreement between the parties, the law will not imply an obliga-

tion unless the failure to imply such obligation will result in the unjust enrichment of the defendant. This is illustrated by certain decisions involving actions for money had and received. As was in said in *Pollak* v. *Staunton,* 210 Cal. 656 at page 665 [293 Pac. 26], "The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain. The law implies the promise from the receipt of the money to prevent unjust enrichment. The measure of the liability is the amount received." Recovery is denied in such cases unless the defendant himself has actually received the money. (*Whittier* v. *Home Sav. Bank,* 161 Cal. 311 [119 Pac. 92]; *Papeschi* v. *La Cava,* 93 Cal. App. 209 [269 Pac. 731].)

In some of the authorities, it is said that the obligation will be implied in law where the defendant has "received the benefit". (*Long* v. *Rumsey,* 12 Cal. (2d) 334 [84 Pac. (2d) 146]; Woodward, Quasi-Contracts, sec. 104; Keener, Quasi-Contracts, pp. 278, 279.) Thus in *Long* v. *Rumsey, supra,* this court said at page 344, "The only promise implied by law is a promise to pay based upon the equitable doctrine that the promisor, having received the benefit, should pay its reasonable value." In that case the services were performed with respect to and for the direct benefit of the deceased himself and the language of said decision should not be construed to mean that an obligation will be implied in law where the direct benefit is received by a third party and the only benefit received by the defendant is the incidental benefit which he may find in the satisfaction of obtaining compliance with his request. (See *Gazam* v. *Simpson,* 114 Fed. 71; *Henrikson* v. *Henrikson,* 143 Wis. 314 [127 N. W. 962, 33 L. R. A. (N. S.) 534]; *Kimmins* v. *Oldham,* 27 W. Va. 258; *Vanderhoef* v. *Parker Bros. Co.,* 267 Mich. 672 [255 N. W. 449].) The authorities on the subject are reviewed in an article in 44 Harvard Law Review, page 623, where it is said at page 624, "Where the part performance of a contract within the statute of frauds consists of property or services furnished to a third person, the courts generally do recognize the principle that recovery is dependent upon the defendant's enrichment and deny *quasi*-contractual recovery."

We are not unmindful of plaintiff's claim that the above-mentioned authorities are inapplicable as the trial court found that the services furnished to Eugenia Izuel "were rendered by said plaintiff to said Antonio Izuel" and that said Antonio Izuel accepted "the benefits derived therefrom". These findings, however, must be read in the light of the evidence and of the admitted facts. Only in the sense that said services were rendered at the request of Antonio Izuel, may it be said that they were rendered "to said Antonio Izuel" or that said Antonio Izuel accepted "the benefits derived therefrom". The only benefit which could be referred to in the findings was the incidental benefit which said Antonio Izuel may have found in the satisfaction of obtaining compliance with his request and such incidental benefit was insufficient to create an obligation implied in law under the authorities last cited.

The judgment is reversed.

Shenk, J., Curtis, J., Knight, J., *pro tem.*, Houser, J., and Edmonds, J., concurred.

Rehearing denied.